THE EQUITABLE GAS LIGHT COMPANY OF BALTIMORE CITY *vs.* THE BALTIMORE COAL TAR AND MANUFACTURING COMPANY.

*Contract—Memorandum—Statute of Frauds, 29 Charles II, ch. 3, sec. 4, clause 5—Specific Performance—Injunction—Part Performance.*

A bill in equity alleged that on the 14th of February, 1882, the defendant agreed to sell to and allow the plaintiff to take away all the coal tar that might be produced at the defendant's gas works in the City of Baltimore, for and during the term of five years from that date, for a stipulated price per gross ton, payable four months from the 20th of each month; that this contract, at the time the terms thereof were agreed upon, was not otherwise reduced to writing than in the form of a mere memorandum in a pocket memorandum book of the president of the plaintiff company, and such memorandum was not signed by any one for or on behalf of the defendant; that the terms of the contract as noted in the memorandum book, were expressly assented to by the vice-president, then acting as president of the defendant company; and it was then and there distinctly agreed that the terms of the contract thus agreed upon, should be reduced to writing in proper form and be signed by the parties thereto; that a contract was, in due time, prepared in duplicate form, one of which duplicates was signed by the president of the plaintiff company, and both were submitted to and left with the president of the defendant for execution, who approved of the contract thus prepared, and promised that it should be signed forthwith by the proper officers of the defendant; that the plaintiff supposing that the contract had been duly signed on the part of the defendant, and confiding in the good faith of its officers, proceeded at once to carry out the terms of the contract on its part, by taking away the coal tar from the works of the defendant, and paying therefor as required by the terms of the agreement, and continued so to do down to the time of filing the bill. It was then alleged that in November, 1882, the defendant notified the plaintiff that the latter should pay a higher price for the coal tar than was originally contracted for, or otherwise it could not get the coal tar; but the plaintiff refused to accede to such proposition; that the plaintiff then demanded the production of the

Equitable Gas Light Co. *vs.* Baltimore Coal Tar & Manufacturing Co.

written contract, which demand was refused under the profession of ignorance of the existence of such contract. It was then charged that the written contract was either signed on behalf of the defendant and afterwards fraudulently withheld by its officers, with the view of obtaining an undue and fraudulent advantage of the plaintiff, or such officers had purposely refrained from signing such contract with the fraudulent intent of deceiving the plaintiff, and of keeping the matter within their own control, to enable the defendant to extort from the plaintiff a higher price for such coal tar than that agreed upon in the contract. It was then alleged, that in June, 1884, the defendant gave notice to the plaintiff that the latter would not be allowed to take away any more of the coal tar after the last day of that month; and the bill then proceeded to charge that if the defendant were permitted to evade or escape from the obligation of its contract, and be allowed to sell and deliver the coal tar to other parties, the plaintiff would thereby suffer great and irreparable damage, for which no adequate redress or remedy could be obtained at law, for the reason that the coal tar contracted to be supplied by the defendant was indispensable to the business of the plaintiff, and the latter could not otherwise obtain a supply in the City of Baltimore, and if the defendant were permitted to withhold the supply, it would be impossible for the plaintiff to fulfil its contracts otherwise than by purchasing the coal tar in other and distant cities, and transporting the same at great expense and loss, the amount of which it was impossible to estimate in advance, &c. The plaintiff prayed that the defendant might be required to produce in Court the written contract prepared and left with its president to be signed, and if not already signed on behalf of the defendant, that the latter be required to execute the same as originally contemplated; or, if the duplicates be lost or destroyed, that the defendant by its officers, be required to sign the original memorandum made at the time the terms of the contract were agreed upon. The plaintiff also prayed that the contract as set forth in the bill, be specifically enforced; and that the defendant, in the meantime, be restrained by injunction from disposing of the coal tar to any third party; and for general relief. HELD:

1st. That the memorandum made of the contract, not being signed by the party sought to be charged, was not sufficient to charge the defendant at law; yet the contract was not void. (Statute of Frauds, 29 Charles II, ch. 3, sec. 4, clause 5.)

2nd. That if the allegations of the bill in respect to the fraudulent withholding of the written contract, or the fraudulent refusal to

OCTOBER TERM, 1884. 287

Equitable Gas Light Co. *vs.* Baltimore Coal Tar & Manufacturing Co.

execute such contract, be established by proof, the defendant should be decreed to produce or to execute the contract in manner and form in accordance with the express agreement and understanding of the parties.

3rd. That the contract, according to the allegations of the bill, being one of a nature proper to be specifically enforced, the plaintiff was entitled to an injunction to restrain the defendant from otherwise disposing of the subject-matter of the contract, though the negative obligation not otherwise to dispose of the material might be only implied from the positive terms of the agreement.

The equity of part performance to entitle the plaintiff to specific execution of contracts within the Statute of Frauds, does not extend to contracts within the fifth clause of the fourth section of said Statute, when such contracts, not being evidenced by writing, relate to personal service, or the subject-matter of them is the sale and delivery of mere personal chattels.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, and BRYAN, J.

*Thomas W. Hall,* for the appellant.

I. The writ of injunction to restrain the violation of a contract for the sale of chattels is a remedy not favored by the Court and but sparingly resorted to in extreme and exceptional cases. It is a negative and specific enforcement of the contract; and specific performance of contracts for the sale of goods is seldom granted, for the reason that adequate compensation for the breach of such contract may be had at law. *Leake on Contracts,* 1119, 1126; *Fothergill vs. Rowland, L. R.,* 17 *Eq.,* 132; *Pollard vs. Clayton,* 1 *K. & J.,* 462; *Brittain vs. Rossiter, L. R.,* 11 *Q. B. D.,* 123; *Madduson vs. Alderson, L. R.,* 8 *App. Cases,* 467.

The inadequacy of the legal remedy must clearly appear to justify the interposition of the Court. The allegation

in the bill that the plaintiff has contracted for the sale in advance of the products to be made by it from the coal-tar to be produced at the defendant's works during the next twelve months, and that if deprived of this source of supply, the plaintiff, in order to fulfil its contracts, will be compelled to purchase coal-tar elsewhere and transport it to Baltimore at great expense and loss, is not the statement of a case which is beyond the pale of remedy and relief at law. It is but a statement of a claim on account of *special damage* for which the plaintiff would be entitled to sue and for which it could recover at law. *Benjamin on Sales,* (4th Am. Ed.,) secs. 876, 877, and cases cited.

II. The contract set up is but the ordinary contract of a manufacturer stipulating for a continuous supply and delivery of the raw material of manufacture for a term of years. It differs essentially from the very limited class of cases in which equity interferes to enforce contracts to deliver a specific chattel of unique character or exceptional value, not to be measured by ordinary standards, as *e. g.* the Pusey horn, in the leading case of *Pusey vs. Pusey,* or the Duke of Somerset's patera, in *Somerset vs. Cookson.* 1 *White & Tudor's Lead. Cas. in Eq.,* 1109, 1110; *Leake on Contracts,* 1127.

The jurisdiction in equity to grant an injunction to restrain the violation of contracts relating to personal property, is substantially coincident with its jurisdiction to compel specific performance. The injunction is, in effect, a negative specific enforcement; and if, upon the case presented, the Court will not decree a specific performance, but will remit the party to his remedy at law, neither will it, according to the weight of authority in this country, interfere by injunction. 3 *Pomeroy Eq. Juris. sec.* 1343, note 2, and Am. cases cited, and sec. 1402; *Hahn vs. The Concordia Society,* 42 *Md.,* 465.

III. In the present case the application for an injunction is purely and confessedly incidental to the prayer for spe-

cific performance. If the allegations of the bill are insufficient to sustain a decree for specific performance, they will not support an injunction. The requirements in this State, necessary to support a decree for specific performance of a contract for the sale and delivery of personal property, are clearly defined by the decisions of this Court.

(*a.*) The inadequacy of the legal remedy must clearly appear, and is the criterion and foundation of the right to relief. *Waters vs. Howard*, 1 *Md. Ch. Dec.*, 112, *and* 8 *Gill*, 262; *Duvall vs. Myers*, 2 *Md. Ch. Dec.*, 401; *Geiger vs. Green*, 4 *Gill*, 472.

(*b.*) The existence and terms of the contract must clearly appear. "No rule is better established than that every agreement, to merit the interposition of a Court of equity in its favor, must be fair, just, reasonable, *bona fide, certain in all its parts, mutual, &c.;* and if any of these ingredients are wanting, Courts of equity will not decree a specific performance." This is the language of this Court in a number of cases. *Griffith vs. Frederick Co. Bk.*, 6 *G. & J.*, 439; *Stoddert vs. Bowie's Ex.*, 5 *Md.*, 35; *Smith vs. Crandall*, 20 *Md.*, 500; *Reese vs. Reese*, 41 *Md.*, 559.

(*c.*) If the contract depend upon parol evidence and acts of part-performance, the existence of the contract, the terms and acts of part-performance must be established by clear and satisfactory proof. The gist of the present contention is to show a contract for five years. The controversy is not in regard to price or any other term of the contract. It is, whether there was any contract between the parties which was not terminable by such notice as was given by the defendant on June 5th, 1884. There being no memorandum in writing signed by the defendant or any one in its behalf, such as the Statute of Frauds requires in case of agreements not to be performed within one year, the reliance of the plaintiff to establish the existence of such a contract as it asks the Court to enforce, must rest entirely upon the acts of part-performance al-

leged in the bill. Those acts of part-performance wholly fail to meet the requirements of the Court.

" When a party claims to take the case out of the Statute of Frauds on the ground of part-performance of the contract, he must make out, by clear and satisfactory proof, *the existence of the contract as laid in the bill,* and the act of part-performance must be of the identical contract set up. *It is not enough that the act is evidence of some agreement, but it must be unequivocal and satisfactory evidence of the particular agreement charged in the bill.*" *C. & O. Canal Co. vs. Young,* 3 *Md.,* 490.

" In cases for specific performance, the complainant must establish the very contract set up in the bill; and all acts of part-performance relied upon to take the case without the operation of the Statute of Frauds, must be clear and definite and refer exclusively to the alleged agreement." *Mundorff vs. Kilbourn,* 4 *Md.,* 462. To the same effect, and for the most part in the same language, see the decisions of this Court in *Smith vs. Crandall,* 20 *Md.,* 500, 501; *Rosenthal vs. Freeburger,* 26 *Md.,* 80; *Billingslea vs. Ward,* 33 *Md.,* 51, 52; *Semmes vs. Worthington,* 38 *Md.,* 326-7; *Reese vs. Reese,* 41 *Md.,* 559.

The simple taking by the plaintiff of coal-tar from the defendant's tanks and paying for the same at a certain price, until notified by the defendant to discontinue such taking, may show "some agreement" between the parties, but utterly fail to "identify" the "particular agreement set up in the bill." They indicate the existence of "arrangements" between the parties, in the language of the defendant's notice of the 3d of June, but do not throw the faintest light upon the nature of those "arrangements." Such acts of performance would be perfectly consistent with an "arrangement" terminable at any time at the pleasure of either party. Even the allegation in the bill, that during three specified months the plaintiff took the tar at a loss, which it would not have done but for the

obligation of its contract, does not show an agreement for five years, or for any specified number of years. Such an obligation to take the tar in December, 1882, and January and February, 1883, is no evidence of a right to continue to take it after the 1st of July, 1884, which is "the particular agreement set up in the bill," and which the Court is asked to enforce by its decree.

Failing to present a case which would justify a decree for specific performance, the plaintiff is not entitled to an injunction as prayed.

*William Reynolds*, for the appellee.

I. Has the appellee made out, by the allegations of its bill, a case for specific performance? "When the contract is definite in its terms and provisions, and established by unequivocal testimony, and the party complaining of its non-performance has no adequate remedy at law by way of compensation in damages, a Court of equity would not hesitate to afford relief." *Fardy, et al. vs. Williams*, 38 *Md.*, 502.

The contract as set forth in the bill and by the written memorandum, is definite in its terms and provisions, and being within the provisions of the fourth section of the Statute of Frauds, that no action shall be brought upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized, the appellee has no remedy at law.

Although Courts of equity ordinarily refuse to decree specific performance of contracts within the Statute of Frauds, there are two classes of cases in which they do not hesitate to enforce them, viz.,

(*a.*) When the signing of the paper required by the Statute has been prevented by the fraud of the defendant.

Equitable Gas Light Co. *vs.* Baltimore Coal Tar & Manufacturing Co.

See 2 *Pomeroy Eq. Juris.*, sec. 921; *Pomeroy Specific Perf. Con.*, secs. 142–144; *Mestaer vs. Gillespie*, 11 *Ves.*, 627–8; *Haigh vs. Kaye*, L. R., 7 *Chy. App.*, 469.

(*b.*) Where the complainant has, in performance of the contract, done acts of a substantial nature, and such that he would suffer an injury amounting to a fraud by the refusal of the other party to execute the agreement. *France vs. Dawson*, 14 *Ves.*, 387; *Hamilton vs. Jones*, 3 *G. & J.*, 127; *Md. Savings Inst. vs. Schroeder*, 8 *G. & J.*, 93–110; *Hall and wife vs. Hall*, 1 *Gill*, 390; *Dugan vs. Gittings*, 3 *Gill*, 138–57; *Shepard vs. Bevin*, 9 *Gill*, 32; *Semmes vs. Worthington*, 38 *Md.*, 327; *Cardwell vs. Carrington*, 9 *Peters*, 86–103; *Neale vs. Neale*, 9 *Wall.*, 1, 9; *Williams vs. Morris*, 95 *U. S.*, 444, 457; *Lester vs. Foxcroft*, 1 *W. & T. Lead. Cas. Eq.*, *637; *Ungley vs. Ungley*, L. R., 4 *Ch. Div.*, 73.

In the case of *Jones vs. Hardesty*, 10 *G. & J.*, 404, 417, this Court refused to allow the defendant to set up the Statute of Frauds as a bar to the specific performance of a verbal contract which was to be performed more than one year after it was made, because they had already received a valuable consideration for the performance of their part of the agreement.

The bill in the case not only alleges that the signing and delivery to the plaintiff of the written memorandum of the contract required by the Statute was prevented by the fraud of the defendant, which would bring the case within the first class—(*a.*) but it also sets forth that the plaintiff, by taking the defendant's tar at a heavy loss during the months of December, 1882, and January and February, 1883, which it would not have done except in performance of its obligations under the said contract, has hereby done such acts of a substantial nature that it will suffer an injury amounting to a fraud by the refusal of the defendant to carry out its part of the agreement, and thus brings the case also within the second class—(*b.*)

II. Is the case made out by the plaintiff's bill one which warranted a preliminary injunction? Wherever the contract which a Court of equity is called upon to enforce, would put the complainant in possession of specific chattels which the defendant holds, it is the settled practice to restrain the latter by injunction from disposing of such chattels before final decree, on the ground that such disposal would inflict irreparable injury upon the complainant by rendering impossible the specific performance of the contract. *Rose & Gauss vs. Bevan,* 10 *Md.,* 466; *Myers vs. Amy,* 21 *Md.,* 302; *Martin vs. Jewell,* 37 *Md.,* 530, 536; *Laeber vs. Langhor,* 45 *Md.,* 478, 482; *Hart vs. Herwig,* 8 *L. R. Chy. App.,* 860; *Osborn vs. Bk. of United States,* 9 *Wheat.,* 845; *McCaull vs. Braham,* 16 *Fed. Reporter,* 35, *and note; Hughes vs. Graham,* 35 *Law Journal, Q. B.,* 335; *Buxton vs. Lester,* 3 *Atkyns,* 383–5; *Claringbold vs. Curtis,* 21 *Law Journal Rep. N. S. Ch.,* 541; 3 *Pomeroy Eq. Juris.,* 441, 444, 457; 3 *Parsons on Contracts,* 370, 373, 377; *Singer Manfg. Co. vs. Union Button-hole, &c., Co.,* 6 *Fish Pat. Cas.,* 480. *See also, Adderly vs. Dixon,* 1 *Sim. & Stu.,* 607; *Sullivan vs. Tuck,* 1 *Md. Chy. Dec.,* 59.

From the allegations of the bill it is clear that by the action of the defendant in refusing to let the plaintiff take any more tar, the latter will be prevented from fulfilling its contracts to supply the products of that tar to its customers, and will thereby not only be subjected to heavy pecuniary liabilities, but will also suffer serious and irreparable damage in its business.

ALVEY, C. J., delivered the opinion of the Court.

This is a bill filed by the appellee, the plaintiff below, for an injunction, and for specific performance of a contract set forth in the bill. The injunction was granted, and, upon answer filed by the defendant, an appeal was taken from the order granting the injunction. We are

to enquire therefore whether, upon the allegations of the bill, assuming that they will be supported by proof, there is such case stated as justified the Court in granting the injunction? And this depends upon the antecedent question whether, upon proof of the allegations of the bill, there will be such case presented as will justify the Court in decreeing specific performance of the contract alleged.

The contract alleged in the bill is, that on the 14th of Feb., 1882, the defendant agreed to sell to and allow the plaintiff to take away all the coal-tar that might be produced at the defendant's gas works in the city of Baltimore, for and during the term of five years from that date, for a stipulated price per gross ton, payable four months from the 20th of each month. That this contract, at the time the terms thereof were agreed upon, was not otherwise reduced to writing than in the form of a mere memorandum in a pocket memorandum book of the president of the plaintiff company, and that such memorandum was not signed by any one for or on behalf of the defendant. It is alleged that the terms of the contract, as briefly noted in the memorandum made at the time, were expressly assented to by the vice-president, then acting as president, of the defendant company; and that it was then and there distinctly agreed that the terms of the contract thus agreed upon should be reduced to writing in proper form, and be signed by the parties thereto; and to that end it was agreed that the president of the plaintiff should have the contract prepared in writing for the signatures of the proper officers of the respective parties: That such contract was, in due time, prepared in duplicate form, one of which duplicates was signed by the president of the plaintiff company, and both duplicates were submitted to and left with the president of the defendant for execution, and that said president approved of the contract thus prepared, and promised that it should be

signed forthwith by the proper officers ·of the defendant. That the plaintiff, supposing that the contract had been duly signed on the part of the defendant, and confiding in the good faith of its officers, failed to call for the duplicate that was, or should have been, signed on the part of the defendant, but proceeded at once to carry out the terms of the contract on its part, by taking away the coal-tar from the works of the defendant, and paying therefor as required by the terms of the agreement; and that it has continued so to take away and pay for such coal-tar down to the time of filing the bill.

It is then alleged that the defendant, through its president, in Nov., 1882, notified the plaintiff that the latter should pay a higher price for the coal-tar than was agreed upon by the contract recited, or otherwise it could not get the coal-tar; but the plaintiff refused to accede to such proposition, and insisted upon the observance of the terms of the contract: That the plaintiff then demanded the production of the written contract, which was supposed to have been signed by the proper officers of the defendant, but which demand was refused, under the profession of ignorance of the existence of such contract. It is then charged that the written contract left with the president of the defendant was either signed on behalf of the defendant and afterwards fraudulently withheld by its officers, with the view of obtaining an undue. and fraudulent advantage of the plaintiff, or such officers had purposely refrained from signing such contract, with the fraudulent intent of deceiving the plaintiff, and of keeping the matter within their own control, to enable the defendant to extort from the plaintiff a higher price for such coal-tar than that agreed upon in the contract. It is then alleged, that in June, 1884, the defendant gave notice to the plaintiff that the latter would not be allowed to take away any more of the coal-tar after the last day of that month; and the bill then proceeds to

charge, that if the defendant is permitted to evade or escape from the obligation of its contract, and be allowed to sell and deliver the coal-tar to other parties, the plaintiff will thereby suffer great and irreparable damage, for which no adequate redress or remedy could be obtained at law, for the reason that the plaintiff is engaged in the manufacturing of certain articles for which the coal-tar is a necessary material, and relying upon the contract with the defendant, the plaintiff has contracted for the sale, in advance, of all the products that can be made by it from the coal-tar to be obtained from the defendant's gas-works for the next twelve months; and as a supply of such coal-tar cannot be otherwise obtained in the city of Baltimore, it would be impossible for the plaintiff to fulfil its contracts otherwise than by purchasing the coal-tar in other and distant cities, and transporting the same at great expense and loss, the amount of which it is impossible to estimate in advance, &c.

Upon these allegations the plaintiff prays that the defendant may be required to produce in Court the written contract prepared and left with its president to be signed, and if not already signed on behalf of the defendant, that the latter be required to execute the same as originally contemplated; or, if the duplicates be lost or destroyed, that the defendant, by its officers, be required to sign the original memorandum made at the time the terms of the contract were agreed upon, and which is filed with the bill as an exhibit. The plaintiff also prays that the contract, as set forth in the bill, be specifically enforced; and that the defendant, in the meantime, be restrained by injunction from disposing of the coal-tar to any third party; and for general relief.

It is very clear that the contract alleged, unless evidenced by a sufficient writing, is within the prohibition of the fifth clause of the fourth section of the Statute of Frauds, of 29 Charles II, ch. 3, which declares that no

action shall be brought " upon any agreement that is not to be performed within the space of one year from the making thereof," unless such agreement, " or some *memorandum* or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorised." Here the memorandum made of the contract, not being signed by the party sought to be charged, is not sufficient to charge the defendant at law; yet the contract is not void. The statute only interposes a prohibition to maintaining an action thereon. But it seems to be regarded as a settled principle, *that the equity of part performance,* to entitle the plaintiff to specific execution of contracts within the Statute, does not extend to contracts within the prohibitory clause just recited, when such contracts, not being evidenced by writing, relate to personal service, or the subject-matter of them is the sale and delivery of mere personal chattels. *Pom. Spec. Perf. of Contr.*, secs. 99, 100; *Britain vs. Rossiter, on Appeal,* 12 *Q. B. Div.*, 123, referred to with approval by the Lord Chancellor and Lord BLACKBURN, in the recent case of *Madison vs. Alderson,* 8 *App. Cas.*, 474, 490.

But in this case there is a preliminary question that may relieve the case of the difficulty just stated, and that is, whether, upon the allegations of the bill, in respect to the fraudulent withholding of the written contract, or the fraudulent refusal to sign such contract, in accordance with the express agreement alleged, a Court of equity should not exercise jurisdiction, either to require the contract to be produced, if signed, or if it be not signed, that the defendant be required to produce and execute the written contract, prepared and left to be signed, in pursuance of the express agreement in that behalf. This agreement was, according to the allegations of the bill, of a distinctive character, and was looked to by both the contracting parties at the time as essential to the security of their

rights. To allow either of the parties to evade its liability and to get the advantage of the other by resorting to such a fraudulent subterfuge as that charged upon the defendant, would be against all equity and conscience, and such as no well-adjusted system of jurisprudence could tolerate. The authorities, we think, fully warrant a Court of equity in the exercise of its jurisdiction in such case, to enforce the production of the contract fraudulently withheld to the injury of the plaintiff, or to enforce the due and proper execution of the contract, if such execution be fraudulently and without justifiable excuse delayed, to the injury of the plaintiff. In the case of *Stoker vs. Wedderburn*, 3 *K. & J.*, 403, an application for specific performance of a contract, the proposition was fully acceded to by Vice-Chancellor Wood, that where there was an agreement to execute a deed or other instrument containing certain provisions, the Court would order the execution of such instrument, without regard even to the question whether or not its provisions were such as the Court could decree them to be specifically performed, the object being to vest in the parties the legal rights which they had mutually agreed to confer on each other. And the enforcement of such principle is not by any means of a novel or doubtful character, or of unfrequent occurrence. *Taylor vs. Fire Ins. Co.*, 9 *How.*, 390. If, therefore, the allegations of the bill, in respect to the withholding, or refusal to execute the contract, be established by proof, this Court is of opinion that the defendant should be decreed to produce or to execute the contract in manner and form in accordance with the agreement and understanding of the parties.

And this being done, the question then arises, whether the contract is of a nature that a Court of equity will specifically enforce it ; for it seems to be a well settled general rule that the Court will not interfere by injunction to restrain the breach of a contract for the sale and delivery of chattels which it could not specifically perform. In

such case the party injured by the breach of the contract is left to his remedy at law. *Fothergill vs. Rowland*, L. R., 17 *Eq.*, 132.

It is certainly a well recognized general principle by Courts of equity that they will not decree specific performance of contracts for the sale of goods and chattels, not however because of the nature of the property, the subject-matter of the contract, but because damages at law, calculated on the market price of the goods and chattels bargained for, furnish, in ordinary cases, an adequate redress to the purchaser for the breach of the bargain by the vendor. 2 *Sto. Eq.*, sec. 717; *Sullivan vs. Tuck*, 1 *Md. Ch. Dec.*, 63. But there are many exceptions to this general rule, founded principally upon the inadequacy of the remedy at law in the particular case, or the special and peculiar nature and value of the subject-matter of the contract. In the 2d vol. *of Story's Equity, sections* 718 to 725, the general rule, with the exceptions thereto, will be found fully discussed, with reference to all but the very recent cases. And among the cases forming exceptions to the general rule, there is one stated of a contract for the sale of 800 tons of iron, to be paid for in a certain number of years by instalments, of which specific performance was decreed ; for the reason, as supposed by the author, that, under the particular circumstances of the case, there could be no adequate compensation in damages at law ; for the profits upon the contract being dependent upon future events could not be correctly estimated in an award of present damages. And so in the case put by Lord HARD-WICKE, in the case of *Buxton vs. Lister*, 3 *Atk.*, 385, and repeated by Judge STORY, as an apt illustration ; a man may contract for the purchase of a great quantity of timber, as a ship-carpenter, by reason of the vicinity of the timber, and this may be well known and understood on the part of the seller ; and in such case a specific performance would seem to be indispensable to justice. And so

Mr. *Pomeroy* in his excellent work on *Specific Performance of Contracts, sec.* 15, *p.* 20, states it as a well settled principle in the doctrine of specific performance, that a contract for the sale and delivery of chattels which are essential in specie to the plaintiff, and which the defendant can supply, while no one else can, will be specifically enforced. In such case the plaintiff could not be indemnified by any such amount of damages as he could recover at law.

In this case the allegation is that the coal-tar contracted to be supplied by the defendant is indispensable to the business of the plaintiff, and that the latter cannot otherwise obtain a supply in the City of Baltimore, and that if the defendant were permitted to withhold the supply, the plaintiff would be subjected to great additional expense and labor in procuring the material from distant cities. This gives the material a special and peculiar value to the plaintiff in Baltimore, and makes it specially inequitable in the defendant to refuse to perform its agreement. As was said by the Chancellor in *Sullivan vs. Tuck, supra,* it would be impossible, or at all events extremely difficult, for a Court of law to give the plaintiff adequate damages, that is, to determine and measure the amount of damages which the plaintiff may sustain in the future, by the refusal to allow it to take away the material from the defendant's works, in fulfilment of the contract. The contract, therefore, according to the allegations of the bill, being one of a nature proper to be specifically enforced, the Court will interfere by injunction to restrain the defendant from otherwise disposing of the subject-matter of the contract, though the negative obligation not to otherwise dispose of the material may be only implied from the positive terms of the agreement. This principle is abundantly established by repeated decisions. *Wolverhampton, &c., R. Co. vs. London & N. W. R. Co., L. R.,* 16 *Eq.,* 433,

440; *De Mattos vs. Gibson*, 4 *De G. & J.*, 276; *Le Blanch vs. Granger*, 35 *Beav.*, 287; *Holroyd vs. Marshall*, 10 *Ho. L. Cas.*, 191, 210, *per Lord Chancellor* WESTBURY. We shall therefore affirm the order appealed from, with costs in this Court to the appellee.

*Order affirmed, and*
*cause remanded.*

(Decided 11th March, 1885.)