SIMMS v. SOUTHERN PIPE LINE CO. et al.
(No. 7497.)

(Court of Civil Appeals of Texas. Galveston. April 27, 1917. Rehearing Denied May 17, 1917.)

1. INJUNCTION ⬅137(1)—RIGHT TO REMEDY —ADEQUATE REMEDY AT LAW.
Where, in a pipe line company's suit to enjoin defendant from violating a contract whereby defendant's vendor agreed to sell to plaintiff all the oil produced on the leasehold, and to secure a mandatory injunction requiring defendant to deliver to plaintiff the oil covered by the contracts instead of selling same to third persons or otherwise disposing of same, it appeared that plaintiff and the vendor had a plain, complete, and adequate remedy at law, and could easily establish their damage in a court of law, inasmuch as all oil produced by defendant was tested and gauged by skilled and competent men representing defendant and the owner of royalties reserved in the lease contract, and a record of such tests and measurements preserved, it was error to grant a temporary injunction.
[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 307.]

2. MINES AND MINERALS ⬅74—CONTRACT TO SELL OIL—BINDING EFFECT—PURCHASER OF LEASEHOLD.
Where one purchases an oil lease with knowledge that his vendor has contracted that the oil produced on the property shall be sold and delivered to a pipe line company at a price named in the sale contract, he is bound by such contract.
[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 202.]

3. INJUNCTION ⬅137(4) — TEMPORARY INJUNCTION—TRANSFER OF PERSONALTY.
A preliminary injunction will not issue to compel the transfer of oil by the producer to pipe line company under a contract between the company and the producer's vendor until the question of the producer's liability under the contract has been finally determined.
[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 309.]

4. INJUNCTION ⬅16 — RIGHT TO REMEDY — LEGAL REMEDY.
An injunction will not be granted merely because the relief thereby furnished will be more speedily obtained than by means of the legal remedy.
[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 15.]

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Injunction by the Southern Pipe Line Company against E. F. Simms and another. From an order granting temporary injunction for plaintiff, the defendant named appeals. Reversed and rendered.

R. U. Culberson and John W. Parker, both of Houston, for appellant. Ross & Wood, L. A. Carlton and H. F. Montgomery, all of Houston, for appellee Southern Pipe Line Co. Huggins & Kayser and Baker, Botts, Parker & Garwood, all of Houston, for appellee West.

PLEASANTS, C. J. This appeal is from an order of the judge of the Eightieth judicial district granting a temporary injunction in a suit in said court brought by the Southern Pipe Line Company against the appellant and J. M. West. The hearing upon which the injunction was ordered was had upon the sworn pleadings of the parties; no affidavits or evidence of any kind being offered in support of the pleadings.

The following facts disclosed by the pleadings are undisputed:

Prior to September 14, 1916, the defendant J. M. West was in possession as lessee of two tracts of land on the Wm. Scott survey in Harris county, said lands being in the Goose Creek oil field. West had put down wells upon these lands, and was producing oil therefrom on the date mentioned, and had prior to said date entered into several contracts for the sale of the oil produced by him on said leased premises to the plaintiff, Southern Pipe Line Company. These several contracts were similar in form and import, the only difference being that some of them referred to the oil produced on one tract of the leased lands and the other to the oil produced on the other tract, and the first of said contracts referred only to the oil produced on said leased premises up to January 1, 1917, while the latter included the oil produced up to July 1, 1917. The form of the contracts was as follows:

"The Southern Pipe Line Company.
"Oil Purchase Contract.
"To Southern Pipe Line Company:
"The undersigned hereby offers and agrees to sell and deliver to you five-sixths or 83⅓ per cent. of the oil to be produced and saved from wells known as No. 1, and up, situated upon the Geo. T. Sweet lease, in the Goose Creek oil field, subject to the further terms hereof, at sixty-five (65) cents per barrel of forty-two gallons each.

"The 'further terms' are these:

"(1) You are to begin taking such production as soon as possible (and certain within two days) after 7 o'clock a. m. on the 1st day of January, 1917, and continue so doing until 7 a. m. on the 1st day of July, 1917, but you shall not be compelled to take exceeding one thousand (1,000) barrels in any one day.

"(2) Such oil shall be delivered from seller's settling tanks of merchantable quality free from sand and other impurities and fully settled, and be subject to such regular and usual treatment as to measurements, deductions for waste, temperature, etc., as apply to oil taken into your lines upon credit balances.

"(3) The undersigned guarantees the title to the oil referred to and in event of title dispute you are to hold the oil at risk of undersigned until indemnity is furnished, or the dispute is settled, and payment may be made by you within ten days after the end of each month of the contract period.

"(4) In the event of fire or other unavoidable accident injuring your equipment to an extent that you cannot continue to receive the oil, you shall not be held responsible for any loss incurred by such delay or be compelled to take any delivery tendered until such time as by the exercise of due diligence necessary repairs can be made.

"(5) This offer shall become a closed contract from the time it is accepted in writing in your behalf by your duly authorized agent.

"Executed in duplicate this 28th day of August, 1916.          [Signed]  J. M. West.
"Accepted this 28th day of August, 1916.
                    "Southern Pipe Line Company,
                    "By Mills Bennett, V. P. & G. M."

The one-sixth of the oil not covered by this contract was royalty given by West to the owner of the land.

On September 14, 1916, West sold and transferred to defendant Simms all of his right, title, and interest in the leases held by him on the two tracts of land above mentioned in consideration of $100,000 paid him by Simms in cash and the agreement of Simms to pay him $100,000 in oil produced from said leased premises at the current price of such oil at the time of its production, and in addition to give West a royalty of one-fifth of all the oil produced on the premises, but out of this royalty the royalty due the owners of the land under the original lease to West was to be paid. At the time of this sale to Simms there were four producing wells on the property from which a small quantity of oil was being obtained. Two of these wells were being operated by a Mr. Rucker under a contract with West by the terms of which Rucker was to receive for his services and expenses in operating the wells one-half of the oil produced therefrom after deducting the royalty of the owner of the land. The oil from all four of these wells was run into pipe lines of plaintiff under the contracts of sale made by it with West. After Simms purchased the lease and took possession of the premises he allowed this manner of disposing of this oil to continue for some time. By diligent prosecution of the work of developing the property he has greatly increased the production of oil. At the time of the trial in the court below he had seven producing wells in addition to the four small producers mentioned and was drilling ten additional ones. He has in storage tanks 85,000 barrels of oil which he had produced on the land which he refused to turn over to plaintiff under the contracts of sale between it and defendant West. At the time of the hearing the property was producing 1,000 barrels or more a day, and with the coming in of additional wells then being drilled the production will probably be largely increased. This oil is worth $1.25 per barrel. Simms has expended $150,000 or more in producing this oil, and will be required under the terms of his lease to expend large additional amounts in its future development. His leasehold interest is valued at $1,000,000.

Plaintiff's petition sets out the facts above stated, and then alleges, in substance:

That Simms purchased the leasehold interest of West with knowledge of the contracts of sale to plaintiff and took over said property subject to said interests, and, "as plaintiff is advised, expressly agreed when he took over the property that same was being taken over by him subject to the sales contracts, as hereinbefore set out, and agreed expressly with West that he would abide by said sales contracts and perform them as West had agreed to perform them; that the agreement on the part of Simms to perform the contract was a part of the consideration on which the sale was made by West to him; that his promise to West to abide by and perform said contracts inures to the benefit of the plaintiff herein, and creates such privity between the plaintiff and said Simms as gives to the plaintiff the right to sue for the performance of said contracts and for damages suffered by breach thereof;" that Simms, after taking over the property, continued to run the oil that was being produced therefrom into the lines of plaintiff; "that he joined with West in giving directions to this plaintiff as to the handling of the output of said wells; that the plaintiff, after the said Simms had so taken over said property, did, with the knowledge and at the instance of said Simms, apply the oil produced after Simms had bought the property on the sales contract that West had theretofore made; that, as aforesaid, this was done through the concurrent instructions of Simms and West; that the proceeds of the sale of said oil created and coming from the sales contract that had been made with West was, under the direction of West and Simms, paid over to the said defendants herein, West and Simms, in the proportion that they directed that it should be paid over to them; that in so doing Simms not only recognized the existence of the sales contract, but also recognized and acknowledged their binding force on him and his obligation and duty to perform same."

It is then alleged that defendant Simms repudiated said contracts of sale when the market price of oil became greater than the price fixed in said contracts, and refused to deliver any of the oil to plaintiff or run same into plaintiff's pipe line, but is constructing earthen tanks for the storage of said oil, "and is now constructing a pipe line to the Houston Ship Canal, and has in contemplation and threatens to load said oil into vessels and transport the same beyond the limits of this state"; that large quantities of oil have been and will continue to be produced from said leased premises; and that, unless said oil is turned over to plaintiff under its

contracts of sale, it will suffer damage to the extent of the difference between the market value of $1.25 per barrel and the contract price of 65 cents per barrel of all the oil so wrongfully withheld from plaintiff.

Other allegations of the petition are as follows:

"Plaintiff shows that under its sales contracts it has the right to have the oil that it is entitled to tested, measured, and gauged in accordance with the terms of the contracts; that this will be impossible of accomplishment if the defendant Simms is permitted to arbitrarily repudiate the contracts and at his will take and transport the oil beyond the limits of the state of Texas; that he, the said Simms, is not running the oil to the pipe lines of any disinterested third party; that same is not being measured, tested, and gauged as provided for in plaintiff's sales contracts; that if he, the said Simms, is permitted to carry out his purposes, there will be no fair means whereby the plaintiff can ever determine the amount of oil that has been produced by the properties or get accurate information upon which to base a claim for the damages that may be sustained by it.

"Plaintiff would further show that on the faith of receiving the oil from said properties, under its said sales contracts, it, after the making thereof, sold to third parties oil in large quantities that it expected to be produced and delivered to it from the properties in question; that if the defendants herein are permitted to take and appropriate said oil, in open and direct violation of the rights of the plaintiff herein, that it, the said plaintiff, on this account will be subjected to annoyances and lawsuits from other sources, and in this way will suffer a damage that is impossible of measurement in any action at law against the defendants herein."

The prayer of the petition is as follows:

"Premises considered, plaintiff prays that said sales contracts be specifically enforced; that a mandatory injunction be issued herein commanding the said Simms to deliver to the plaintiff herein the oil that it is entitled to under said contracts as same is produced; that in any event the said defendants be enjoined from removing the oil from this state, from selling it to third parties, or in any other way disposing of same; that, if the relief by injunction be not granted, plaintiff prays that a receiver be appointed to take over the oil claimed by the plaintiff and which should properly go to it under its sales contracts, measure, test, and gauge the same, as provided for in said contracts; that same be by said receiver stored with a responsible pipe line company; that it be sold from time to time under the orders of this court, and the money received therefor held in the registry of this court to be applied as the rights of the parties may demand; that upon a hearing plaintiff have judgment against the defendants as the facts may warrant; that, if the plaintiff is denied the right or fails to get the oil that belongs to it, that it have judgment for the difference between the value thereof and the contract price; that if, when the case is tried, the full period of time that plaintiff is so entitled to oil has not elapsed, that it have judgment for such damages as may have occurred to it up to the time of trial, that the judgment entered preserve to it the right to assert its cause of action for the damages that may accrue to it after the time of trial and rendition of judgment; that if the continuing right to sue be not preserved to it, then it asks that the damages suffered by it up to the time of trial be measured on the basis above set out; that the future damage be estimated and determined from all the facts, and that judgment for the full amount of damage suffered, both that found to have actually accrued and that will thereafter prospectively ac-

crue, be entered; that it have judgment for the damage suffered against both Simms and West, but, if it be held that Simms is not liable, that it, notwithstanding, have judgment for its damages against the defendant West; that process in terms of law be issued and served on the defendants requiring them to answer herein; that it have judgment for costs; and it furthermore offering to do equity puts itself in the keeping of the court, and prays for all the relief that it may show itself entitled to, general or special, legal or equitable."

The answer of defendant West, after admitting the execution of the contracts of sale and his obligation thereunder to deliver to plaintiff the oil produced from the leased premises in accordance with the terms of said contracts, contains the following allegations:　　　　•

"This defendant West being thus the owner of the oil produced and to be produced under said leases, save and except the royalties therein provided for, and having entered into the contracts with the plaintiff for the sale of the oil owned by said West and to be produced from said leasehold premises during the time therein specified, and having fully acquainted the defendant Simms with the fact that said oil to be produced from said leasehold interests had been contracted and sold to the plaintiff herein, the said defendant West on the 14th day of September, 1916, transferred, assigned, and conveyed to the said defendant Simms all of the right, title, and interest that he, the said West, then had in and to the said leases hereinabove referred to, delivering to the said Simms at the same time the said contracts so entered into by the said West with the said plaintiff, the Southern Pipe Line Company, the said Simms as a part of the consideration for the transfer of said leasehold interest binding and obligating himself to deliver to the plaintiff herein the oil to be produced from said leased premises in accordance with the terms of the said contract of sale between the said West and the plaintiff Southern Pipe Line Company; this price (65 cents) was at that time (September 14, 1916)·far above the market price for oil produced in the Goose Creek field, which is the location of the land covered by the leases and where the oil was to be produced, and that in view of that fact this contract price, being above the market price, was a valuable asset, coupled with said leases; that in negotiations concerning the transfer of said leases the said West proffered to secure a release of said contracts unless the said Simms would agree, as a part of the consideration, to assume the performance of said contracts, and this the said Simms agreed to do; that if the said Simms had not undertaken the performance of the contract theretofore made between the said West and the said plaintiff, the said West would not have transferred said leases without securing the cancellation of said contracts with the plaintiff; that the said defendant Simms, immediately after the transfer and assignment to him of the said leasehold and said contracts, began the performance of said contracts for the sale of said oil produced from said premises by delivering such oil to the plaintiff herein, and thereafter continued to perform said agreements for the delivery of said oil to the plaintiff herein, just as he had contracted to do, and beyond himself to do by his agreements with the said West, until the price of oil in the Goose Creek field increased to an amount in excess of the price which the Southern Pipe Line Company had contracted to pay, and thereupon the said defendant Simms gave notice to the Southern Pipe Line Company that he would no longer deliver oil under the terms of that agreement; that the said defendant Simms reaped the profits of the contracts en-

tered into between the defendant West and the plaintiff, Southern Pipe Line Company, and at no time sought to repudiate the obligations thereof until it ceased to be profitable to perform said contracts, and without justification of any kind, when the obligations of the contracts became burdensome to him, declared his purpose to disregard them, thus violating the sacred obligations of contracts knowingly and voluntarily assumed, in utter disregard of the rights of the persons to whom he was solemnly bound."

He also repeats the allegations of plaintiff's petition in regard to the necessity of having the oil run into plaintiff's pipe line, or some other disinterested pipe line company, in order that its quantity and quality can be ascertained and proof thereof not be left entirely within the control of defendant Simms. He further alleges:

That by the terms of the lease Simms is required to deliver the royalties due under said lease to the owners of the land as the oil is produced, and "is bound to construct and build on said premises settling tanks and other necessary tanks and receptacles for holding and storing the oil and connect all producing wells with said tanks; that he is required to run all oil into said settling tanks, and that same is therein to be gauged before said oil is taken out of said settling tanks, and the oil shall not be in any manner disposed of until such measurements are properly taken, and similar provisions are contained in the lease on the Gaillard tract. Upon information and belief this defendant charges that the said defendant Simms is not complying with these provisions of his contract, but has failed to construct settling tanks upon said premises, and the oil produced thereon is being conveyed away from said premises into earthen tanks situated on tracts of land other than those described in said leases; that under the terms of said leases performance of every stipulation required in said leases is essential to the preservation of the rights therein conferred, and the failure of the said Simms to perform each of said stipulations is endangering the validity of said leases."

His prayer is as follows:

"Premises considered, the defendant West joins in the plaintiff's prayer that said sales contracts be specifically enforced, and that a mandatory injunction be issued commanding the said defendant Simms to deliver to the plaintiff, Southern Pipe Line Company, the oil which it is entitled to under said contracts as the same is produced; that the said defendant Simms be enjoined from removing the said oil from this state or from selling it to any third person, or in any way disposing of it, and that said West recover the title to and possession of all said oil to which under the facts herein alleged he is entitled. This defendant prays further that a receiver be appointed to take over the oil produced from said property, and which, under the terms of said leases, reservations and contracts the plaintiff, Southern Pipe Line Company, and the defendant West are entitled to pending the final determination hereof, so that the same may be properly stored, preserved, tested, and measured and appropriated to the obligations of said contracts and agreements; that said oil be by said receiver stored in some proper way; and that under proper orders of the court from time to time the same shall be sold and the monies accruing from such sales be held by this court in its registry to be applied and paid over to the parties as it may ultimately be determined they are entitled to receive.

"This defendant prays further for the interposition of the equitable powers of this court to preserve and enforce the rights of this defendant in and to the properties hereinabove described and for all other relief, legal or equitable, to which this defendant is entitled in the premises, and thus he will ever pray."

The answer of defendant Simms contains the following special exceptions to plaintiff's petition and the answer and cross-action of defendant West:

"He specially excepts to said petition because it is not alleged that plaintiff has no adequate remedy at law and will suffer irreparable injury, if injunction is not issued or a receiver appointed, and of this he prays judgment of the court.

"He specially excepts to the petition because the sales contracts declared upon therein are unilateral and void for want of mutuality and certainty, and for lack of consideration; and of this he prays judgment of the court.

"He further specially excepts to the petition wherein relief by mandatory injunction or the appointment of a receiver is sought, because it appears by the allegations of the petition that the action is for a breach of contract, compensable in damages, and plaintiff has an adequate remedy at law; and of this he prays judgment of the court."

"Specially answering the petition, he denies that he purchased the leases on the two tracts of land called the 'Gaillard' and the 'Sweet' with knowledge of the sales contracts mentioned in the petition, or that he assumed such contracts, or that his purchase was subject thereto, or that he agreed to recognize them, or that, in causing the oil to be continued to be run into the plaintiff's pipe line, he did so in recognition of said contracts, but he says that in so running the oil he was performing his contract of purchase of the leases from said West; and he denies that he promised or became liable to deliver to plaintiff any oil produced by him from said tracts in pursuance of such contracts, or that plaintiff became the owner, by virtue of such contracts, of any oil produced, or to be produced by this defendant therefrom, or that he agreed as a part of the consideration for the sale of the leases to him to perform the sales contracts, or that there is or ever has been any privity between him and the plaintiff with reference to said contracts; and he denies that the estate he took in his purchase from the defendant West in the said two tracts was limited or qualified in any manner; and these facts he is ready to verify."

"He denies that the sales contracts were given any consideration or entered in any manner into the contract of sale by West and of purchase by this defendant of the leases. He says that the consideration of the sale of the leases from West to him was $100,000 paid by him to West in cash, and $100,000 to be paid by him to West in oil, to be produced from the two tracts at the current market or pipe line prices, and the differences between the royalty interest to be paid the owners of the respective tracts and a one-fifth interest in the oil. He says that when he acquired the leases there were four producing wells on the two tracts, one on the Sweet No. 13, and three on the Gaillard, Nos. 2, 6, and 10; that 2 and 6 were being operated by one C. T. Rucker, under an agreement with West whereby he was to receive one-half of the oil, and West the other one-half, less the royalty interests; that said Rucker was running the oil into the plaintiff's pipe line; that the production was small, and the interest of West therein was credited to him by the pipe line; that West informed this defendant that he could terminate the arrangement with said Rucker or continue it, as he saw proper; that, owing to the smallness of the production, he elected to let Rucker continue to operate the two wells, and to run the oil to the plaintiff's pipe line, one-half thereof going to the credit of said West, less the royalty interests, as formerly, in pur-

suance of his obligation to pay the $100,000 in oil, and he allowed the oil from well Nos. 10 and 13 to be run into the plaintiff's pipe line and go to the credit of said West for the same reason and purpose; that as soon as this defendant commenced drilling, which was in the course of a month, or such time, he appropriated all of the oil from wells Nos. 10 and 13 for fuel."

"He further shows that both tracts are and have been provided with a sufficient number of settling tanks, and that the oil produced by him from said tracts is first run into such tanks, where it is settled, and then run into earthen storage; that he has competent men who gauge the oil and keep a record thereof, which is in all respects the same as made by responsible pipe lines within this state; that the owners of the royalty interests also have gaugers who gauge the oil in connection with this defendant's gauger; that the quantity and quality of the oil produced is known to the said gaugers, who are reliable men, and the quantity and quality produced can be shown at any time by reference to the records made by said gaugers and by measurement of the storage tanks containing the oil, and neither the plaintiff nor the royalty owners are suffering loss or damage by reason of the way the oil is stored or measured. This defendant further shows that the Gulf Production Company is the owner of the royalty interest connected with the Sweet tract, and receives such interest from this defendant's settling tanks, and is satisfied with the way he is handling the oil; that the royalty interest connected with the Gaillard tract is run into settling tanks, and thence into the storage along with the other oil, and the owners of such interest are satisfied with that disposition of their interests."

"Further specially answering, this defendant says that the oil that has been produced by him and that will be produced by him from said tracts up to July 1, 1917, is, and will be, of the value, at the current market price, of $1.25 per barrel of 42 gallons, and will command this price from the pipe lines, and this defendant says that, if it shall be finally determined that plaintiff is entitled to all of the oil or any part of the oil produced by him from the said two tracts up to July 1, 1917, at the price of 65 cents per barrel, that this defendant is entitled to have judgment against defendant West for the full market or pipe line prices of said oil, namely, $1.25 per barrel, to be applied, so far as required, to the satisfaction of the $100,000 to be paid West in oil as aforesaid.

"Wherefore this defendant prays that the mandatory injunction and the appointment of a receiver, as prayed for by plaintiff, and by defendant West, be denied; that he go hence without day and recover his costs, or, if it shall be held that the plaintiff is entitled to the oil, or any part of the oil produced and to be produced from said land up to July 1, 1917, under the said sales contracts, that then he have judgment over against West for the current market or pipe line prices, namely, $1.25 per barrel for said oil, for his costs, and for general and equitable relief, and in so doing this defendant offers to do and perform whatever act or thing the court shall adjudge to be required of him by equity and good conscience in the premises."

Upon these pleadings the trial judge, after overruling the exceptions of defendant to the petition and answer of defendant West, and refusing the prayer for appointment of a receiver, entered the following order:

"It is ordered that a writ of mandatory injunction issue by its terms directing and commanding the defendant Simms, to deliver to the plaintiff, Southern Pipe Line Company, all oil which he has produced from the leases and wells described in the contracts sued upon by plaintiff, and now in the possession of defendant Simms, in storage, which oil now in storage (except as provided in paragraph V hereof) shall be so delivered by defendant Simms and received by plaintiff as rapidly as practicable, and in the manner and condition provided in the contracts declared upon by plaintiff and on the premises in plaintiff's petition described, and said writ shall also command that the oil hereinafter produced from said leases and wells referred to, pending the trial of this cause on the merits, shall (except as provided in paragraph V hereof) be likewise run to the pipe line of plaintiff under the terms and as provided by the contracts herein sued on, such writ further providing that a correct and accurate gauge of all oil so run by virtue of said order shall be kept both by plaintiff and defendant Simms; such writ also to provide that plaintiff shall (except as provided in paragraph V hereof), pay defendant Simms the sum of 65 cents per barrel of 42 gallons for all oil so run into the pipe line of plaintiff by virtue of this order, such payment to be made as provided in the contracts by plaintiff declared upon herein, and to be forthwith paid over by Simms to West on his obligation to pay West $100,000 in oil in part consideration for the sale of the leases by West to him, but without prejudice to claim of Simms to absolute ownership of the oil or to his right to claim a credit on such obligation at the current or pipe line prices for the oil or any other right that he may have against said West or that West may have against him.

"The foregoing order is conditioned that plaintiff and defendant West shall first execute and file herein a good and sufficient bond in the sum of $300,000, payable to the defendant Simms, and conditioned as required by law, and to be approved by the clerk of this court."

The exceptions mentioned in this order refer to the royalties accruing under the lease contracts. The remainder of the order is not material to any question presented by this appeal.

[1] This order cannot be sustained, because there is a plain, complete, and adequate remedy at law for the injury claimed to have been suffered by appellees. There is nothing in the facts alleged in the pleadings showing that the ordinary measure of damage for breach of contract of sale of personalty would not fully compensate appellees for any injury they have sustained or may sustain by the alleged breach by appellant of the contract of sale, nor are any facts alleged showing that it will be impossible, or even difficult, for appellees to establish their damage in a court of law. The only allegations which in any way tend to show that appellees would be unable to accurately establish the amount of their damage are the allegations in regard to their having to rely upon appellant to have the oil gauged and tested as it is produced and to take his statement as to the quality and quantity of oil produced. These allegations, we think, are fully met by the averments in appellant's answer that the oil is tested and gauged in settling tanks, as it is produced, by skilled and competent men representing appellant and the owners of royalties reserved in the lease contract, and a record of such tests and measurements preserved. These averments are not denied, and, being true, it cannot be reasonably inferred that appellees would have any dif-

.ficulty in establishing the quality and quantity of the oil produced.

It is true that the scope of the application ·of the equitable remedy of injunction has widened from precedent to precedent, and that remedy is now granted where formerly it was held beyond the power of a court to issue such writ. It may be that the time may ·come, which one of the able counsel for appellees in his argument in this case expressed the hope to see, when all contracts can be ·enforced by injunction. That time has not yet come, but its dawning is at hand if the order granting the injunction in this case can be sustained. If a contract for the sale of oil can be enforced by injunction, it follows that a contract for the sale of any chattel can be so enforced, and why not a contract for the payment of money? So far as we have ascertained by examination of the authorities, contracts for the sale of chattels have only been enforced in cases in which it was shown that the chattels contracted for ·could not be obtained in the market or could ·only be obtained at great expense and inconvenience and the failure to obtain them would cause a loss which could not be adequately ·compensated for in an action for damages.

In the case of Equitable Gaslight Co. v. Baltimore Coal Tar Co., 63 Md. 285, specific performance was decreed on a contract to sell coal tar which plaintiff required to fill contracts made by it and which it was impossible to obtain otherwise than by purchasing in distant cities and transporting at great expense. In Gloucester Isinglass & ·Glue Co. v. Russia Cement Co., 154 Mass. 92, 27 N. E. 1005, 12 L. R. A. 563, 26 Am. St. Rep. 214, a contract to furnish fish skins to use in making glue was specifically enforced, it being shown that fish skins were of very limited production, that most of the production was under contract, and that unless relief was ·given by specific performance it would be very difficult, if not impossible, for plaintiff to continue to carry on its business. In the ·case of Texas Co. v. Central Fuel Oil Co., 194 Fed. 1, 114 C. C. A. 21, it was held that an injunction could be granted to compel the defendant to comply with its contract to deliver the oil produced by it from properties owned or controlled by it in one of the Oklahoma oil fields. The contract in that case ·was to run for ten years. On the faith of the contract the plaintiff had expended $700,- ·000 and the defendant was insolvent. None of the facts upon which the equities of the plaintiffs in the cases cited arose are present in the instant case.

[2, 3] Another feature which clearly distinguishes these cases from the one before us is that there is no question in the cited cases that the defendants had executed the ·contracts sued on. In this case the defendant Simms denies that he knew of the existence of the contracts of sale at the time he purchased West's leasehold interest in the properties. The oil in controversy was produced by him and is his property lawfully in his possession. If, when he purchased the lease, he knew that plaintiff had contracts that the oil produced from the property up to July 1, 1917, should be sold and delivered to it at the price named in the sales contracts, he would be bound by such contracts, and plaintiff would be entitled to recover damages for their breach, and, if the facts justified such remedy, to specific performance of the contracts. Until the question of appellant's liability upon the contracts is finally determined he could in no case be required to deliver to appellees the property rightfully and lawfully in his possession.

In the case of Simms v. Reisner, 134 S. W. 278, this court held:

That it was "not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of title, unless the possession has been forcibly or fraudulently obtained by defendant, and the equities require that the possession thus wrongfully invaded be restored, and the original status preserved pending the decision of the issue of title."

We think the rule announced in this case is applicable here.

[4] Upon the question of what is an adequate remedy at law which will deny a plaintiff relief by injunction, it may be conceded, as contended by appellees, that the tendency of our courts has been to require that the remedy at law be more complete, simple, and easily obtainable than was formerly held necessary, but it has never been held that an injunction should be granted merely because the relief so furnished would be more speedily obtained than by means of the legal remedy. The order granting the injunction in effect says that, notwithstanding the fact that the oil in controversy was lawfully produced by appellant, is lawfully in his possession, and, if his claims are true, is not subject to the contracts sued on by appellees, that appellant, pending a final determination of his right to hold the oil, must deliver it to appellees at the price named in the contracts of sale, and if it be finally determined that appellant had the right to keep the oil, he can recover from appellees and their bondsmen as damages the difference between the contract price and the market value of the oil at the time it is delivered to appellees. Under the facts of this case we cannot see why, if the legal remedy of damages is adequate to compensate appellant for loss suffered by him if it be found appellees, under legal process wrongfully obtained, have taken his property from him, the recovery of such damages would not furnish an adequate remedy to appellees for any damages they may sustain by the wrongful withholding of the oil by appellant.

These conclusions render the discussion of the other questions presented by the appeal unnecessary, and require that the order of the trial court granting the injunction be re-

versed and vacated, and judgment here rendered refusing the prayer for injunction; and it is so ordered.

Reversed and rendered.