## WELKER *v.* THE CITY BREWING CO.

*Contracts — Termination — Sale of beer — Provision avoiding if state goes "dry" — Controlled by date when prohibition amendment effective — Specific performance.*

1. The words "In the event * * * the State of Ohio goes dry" used in a written contract executed in 1917 providing for the sale of beer at wholesale for a period of five years, and stipulating that the contract shall be void on the happening of the above event, will be construed to relate, not to the time the state prohibition amendment was adopted in 1918, but to the time the same was to become effective, to-wit, May 27, 1919.

2. In such a case specific performance will lie to compel a compliance with the contract until the amendment rendering the traffic in intoxicating liquors unlawful becomes effective.

(Decided February 24, 1919.)

APPEAL: Court of Appeals for Lucas county.

*Messrs. Hackett & Lynch,* for plaintiff.
*Messrs. Graves & Stahl,* for defendant.

RICHARDS, J. The parties to this litigation entered into a written contract on November 10, 1917, by the terms of which the plaintiff, who is operating a saloon in the city of Toledo, agreed to purchase from the defendant not less than 400 barrels of beer per year for a term of five years, the beer to be delivered at his place of business at $9.00 per barrel, and the defendant agreed to furnish the same to him at the price stipulated and for the time named. The brewing company further agreed to install a suitable set of bar fixtures and to provide certain plumbing and partitions for Welker, all of which was to be paid for by the

application on the indebtedness of $1.00 per barrel of beer delivered.

This action was brought for the purpose of compelling the specific performance of the contract during the time that intoxicating liquors may lawfully be sold in Ohio. The common pleas court rendered a decree in favor of the plaintiff, from which decree the defendant appealed to this court. The written contract contains the following clause:

"In the event Rudolph Welker loses his license, or the State of Ohio goes dry, this agreement is to be null and void."

The parties entered upon the performance of the contract and the defendant delivered to the plaintiff, during the first year of the contract, 399 barrels of beer, pursuant to its terms, which was a substantial compliance for that year.

At the general election held in Ohio on November 5, 1918, there was submitted to the voters the question of adopting a constitutional amendment prohibiting the manufacture and sale of intoxicating liquors as a beverage in the state, and at this election a majority of the votes cast were in favor of such prohibition. By the provisions of the amendment so adopted the same was to become effective on May 27, 1919. The defendant contends that the language quoted from the contract, "In the event * * * the State of Ohio goes dry," applies to the day of the general election when the electors of the state of Ohio voted in favor of the adoption of the prohibition amendment to the Constitution, while the plaintiff contends that the language quoted refers to the time that the amendment so adopted shall go into effect,

which date will be May 27, 1919, and it thus comes about that the interpretation to be placed upon this language of the contract becomes of vital importance. The language "State of Ohio goes dry" is a common expression, often heard, and is an expressive slang phrase, but one not of strict legal accuracy. It can not, of course, be said that Ohio is now "dry," and it certainly will not legally become so prior to the 27th of May, 1919. To use, before November 5, 1918, the phrase "if Ohio goes dry," or to use now the expression "that Ohio has gone dry," could only be interpreted as anticipatory of the approaching drouth, which will not come before May 27, 1919. We think the language used by the parties must be held to refer to the time when the state would become legally "dry," and that will be the date when the amendment becomes effective. Our view on this interpretation is strengthened by the construction which the parties themselves put upon the language before any controversy arose as to its meaning. Beer was furnished by the defendant to the plaintiff under this contract up to the 7th of December, 1918, although it had become apparent, long before that date, that a majority of the voters in Ohio had voted in favor of the adoption of the prohibition amendment. The language used by the parties not being entirely free from ambiguity, the construction which they placed upon the expression used will be given great weight by the courts. 6 R. C. L., page 852, Section 241; 9 Cyc., 588; *Lentz, Exr., et al.* v. *Fritter,* 92 Ohio St., 186, 194, and *The Globe-Rutgers Fire*

*Ins. Co.* v. *The Sherwin-Williams Co.,* 23 C. C., N. S., 390, 395.

In view, then, of the language used by the parties and the practical construction placed on the same by the parties themselves, we hold that the time intended and referred to in the contract is the date that the amendment to the constitution will become effective, to-wit, May 27, 1919.

Counsel for defendant insist, however, that the contract is one for the sale of a commodity which can be bought in the market and that such a contract will not be enforced by an order for specific performance. The general rule undoubtedly is that the terms of a contract to furnish ordinary chattels will not be enforced by specific performance, but to this rule there are numerous exceptions. In determining whether the contract at bar comes within the general rule, or within one of the exceptions thereto, attention must be given to the nature of the contract and the peculiar circumstances now existing. By a proclamation of the President of the United States the brewing of beer is now prevented, and the quantity now on hand can not be increased by further manufacture. It is evident that this quantity will constantly decrease between this date and the date when prohibition will become effective. The contract fixes the price at $9.00 per barrel, and the plaintiff is only able to buy at the present time by paying $15.00 or $16.00 per barrel, and the general principles of economics would seem to indicate that as the quantity of the commodity decreases the price may be expected to increase. The plaintiff is not able, at the present time, to supply his trade by

beer purchased in the city of Toledo, but is able
to do so, at the price of $15.00 or $16.00 per
barrel, by purchasing the same in Milwaukee.
Whether he can continue to so purchase from now
on until the traffic shall become unlawful is not
apparent, and it can not be shown what price
would have to be paid between the present time
and the date when prohibition shall become effec-
tive. In the event that plaintiff should bring an
action for damages at the present time, it would
be impossible to show the quantity that he would
need to supply his trade. The amount of his dam-
ages would be very difficult, if not impossible, of
ascertainment, by reason of the peculiar conditions
existing. In the event of the plaintiff's inability
to procure a supply it would naturally result that
he would have to suspend business, and the dam-
age resulting therefrom would be very difficult to
assess. Under such circumstances specific per-
formance will lie. The rule has been thus an-
nounced in *The Equitable Gas Light Co.* v. *The
Baltimore Coal Tar & Mfg. Co.,* 63 Md., 285,
which involved a contract for the supply of coal
tar produced at the defendant's works during a
period of five years.

The rule was applied in *Central Altagracia, Inc.*
v. *Javierre & Gil et al.,* 3 Porto Rico Fed. Rep.,
256, which case was one involving a contract to
supply to a sugar manufacturing plant, cane grow-
ing on a nearby tract, the loss of which would
cause the mill to close down; in *Texas Co.* v. *Cen-
tral Fuel Oil Co. et al.,* 194 Fed. Rep., 1, where
the litigation arose over a contract to deliver oil
as produced from oil wells; and in *Gloucester Isin-*

*glass & Glue Co.* v. *Russia Cement Co.,* 154 Mass., 92, 26 Am. St., 214.

The general principle is clearly stated in 3 Pomeroy's Equity Jurisprudence (4 ed.), Section 1401 *et seq.*

It is evident that the contract in the case at bar and the peculiar circumstances existing when construed together constitute an exception to the general rule and that the case is one in which specific performance may lie.

*Decree for plaintiff.*

CHITTENDEN, J., concurs.

KINKADE, J., dissents.