762 F.2d 998
 1985-1 Trade Cases 66,589
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Hugh W. Levey and Contee Financial Corp.
v.
E. Stewart Mitchell, Inc., Barton S. Mitchell, John Driggs
Co., Inc., John Driggs, Arundel Asphalt Products,
Inc., William (Billy) Colevas, and "John Doe".
 No. 84-1597.
 United States Court of Appeals, Fourth Circuit.
 Decided May 2, 1985.
 
 1
 Before SPROUSE and CHAPMAN, Circuit Judges, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.
 
 PER CURIAM
 
 2
 This case came to us from an Order of the District Court granting summary judgment to the Defendants. Plaintiffs, Hugh W. Levey and Contee Financial Corporation appeal the district court's dismissal of their antitrust claim against E. Stewart Mitchell, Inc., John Driggs Co., Inc. and Arundel Asphalt Products, Inc. and their respective presidents.
 
 
 3
 The antitrust action arose out of alleged bid-rigging on road construction projects in the Maryland area. Briefly, Contee Sand and Gravel (hereinafter "CSG") was a road construction company which operated in the Maryland area. In February, 1978 CSG submitted bids to the State of Maryland and other governmental entities in response to contract proposals for the construction of public highways. CSG was awarded the contracts and was required to post performance bonds. Fidelity and Deposit Company of Maryland (hereinafter "F & D") agreed to be surety on the performance bond, and as part of the agreement, F & D required CSG to sign an indemnification agreement. Under the indemnification agreement, CSG agreed to reimburse F & D for any cost overrun incurred in the event CSG defaulted and F & D was required to complete the project. As collateral for this agreement, CSG agreed to transfer to F & D any cause of action which CSG might have against material men and others.
 
 
 4
 In mid-1978, CSG defaulted on several of the projects, and F & D was required to complete the projects under the performance bonds. To do this, F & D employed the Defendant contractors and in so doing incurred a $6,000,000 overrun completing CSG's contracts. F & D then filed suit against CSG pursuant to the indemnification agreement for the $6,000,000 overage incurred. CSG was unable to pay the entire claim and experienced further financial difficulty.
 
 
 5
 To facilitate a financial rescue of CSG, Levey formed Contee Financial Corporation for the purpose of advancing money on behalf of CSG and taking assignments of claims against CSG. In October, 1978 a committee of creditors was formed to determine whether some type of composition agreement could be utilized so as to settle the debts due them from CSG. These creditors entered into a composition agreement with CFC but F & D refused. However, subsequently F & D entered into a separate agreement with CFC known as the Agreement of Inducement. Under this Agreement of Inducement, F & D agreed to terminate its suit against CSG and to accept from CFC $590,000 in complete satisfaction of the $6,000,000 claim against CSG. An Assignment of Claim was also executed contemporaneously with the Agreement of Inducement. Under the Assignment of Claim, F & D assigned to CFC its cause of action against CSG and its subsidiaries for the $6,000,000 overage incurred by F & D in performing the bonded contracts.
 
 
 6
 For purposes of this case, it is conceded that the Defendants violated the Sherman Antitrust Act and caused cost overrun damages of $6,000,000. The parties briefed and argued at length the issues of standing and pass through damages.[1] These arguments miss the point. There has been only one injury--the $6,000,000 cost overrun, and the question becomes who is entitled to the claim for the cost overrun, Plaintiffs or F & D. Prior to the Plaintiffs filing of this action, F & D had sued the same Defendants for the antitrust violation. These suits were subsequently settled and presumably F & D received the proceeds of the settlement. However, this would not be a bar to the Plaintiffs if F & D was not entitled to pursue the claim against the Defendants.
 
 
 7
 To determine who is the rightful owner of the claim we need not focus on arcane antitrust doctrines but need only interpret the Indemnity Agreement between CSG and F & D and the Assignment of Claims between F & D and CFC. It is these instruments which purport to transfer the right of action from CSG to F & D and, in turn, to transfer the right of action from F & D to CFC.
 
 
 8
 The proper standard to be applied in interpreting contractual provisions under Maryland law is "that construction which will best accord with the intention of the parties as manifested by the language in the light of all the surrounding circumstances, without stretching the words beyond their import in favor of the creditor or restricting them in aid of the guarantor." Walton v. Washington County Hospital Ass'n., 178 Md. 446, 450 (1950). This is the standard to be utilized in interpreting the following documents.
 
 
 9
 Without question, had CSG never entered into the Indemnity Agreement, it would have been the party who was directly and proximately injured by the unlawful acts of the Defendants and would have been the owner of the chose in action and the proper party to bring the suit. But CSG did enter into the Indemnity Agreement so the question is whether this Agreement effectively assigned the chose in action to F & D. We conclude that it did. The Assignment Clause of the Indemnity Agreement makes clear that all causes of action, be they for antitrust injury or otherwise, were assigned to F & D as collateral for the indemnification agreement. The Clause reads as follows:
 
 
 10
 Third: The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety ... (d) All actions, causes of actions claims and demands whatsoever which the Contractor may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds.
 
 
 11
 App. 000117.
 
 
 12
 Thus, the antitrust cause of action against the Defendants which would have belonged to CSG became F & D's by virtue of the above-stated clause. F & D had to perform under the bond thereby incurring the overage of $6,000,000. CSG had agreed to indemnify F & D; however, as became the case, it was unable to do so. Therefore, F & D was entitled to look to the collateral it held for payment of the debt. The collateral included any cause of action CSG had against any party involved in the contracts connected with the bonding agreement. We believe that the antitrust cause of action fits into that category and that F & D was legally entitled to it.
 
 
 13
 The next inquiry is whether this cause of action which was assigned to F & D by virtue of the Indemnification Agreement passed to CFC under the Assignment of Claims. The language of this document could not be clearer. The first paragraph of the Assignment of Claim states that:
 
 
 14
 For value received, the undersigned creditor hereby assigns to Contee Financial Corporation all of the right, title and interest of the undersigned in any and all claims, demands, or causes of action it may have against any one or more of the debtors. (emphasis supplied).
 
 
 15
 App. 000199.
 
 
 16
 The document begins by defining debtors as Contee Sand and Gravel Co., Inc., Bates Paving Co., Curtis Bay Paving, Co., Inc., Drummond and Company, Inc., and Admix Concrete Corporation, namely Contee Sand and Gravel and its subsidiaries. Appellant argues that this document assigns to CFC the antitrust action which F & D had against the Defendants in this case. As the documents indicate, however, the only claims assigned by this document were those claims which F & D had against CSG and its subsidiaries. Nowhere in the instrument does F & D agree to assign collateral held by F & D to secure the claims.[2] Furthermore, F & D stated by affidavit, which was not contradicted, that it did not assign the antitrust claim. We believe that the interpretation of the various documents makes clear that there was no assignment of the antitrust action to CFC. We agree with the District Court's holdings below regarding the assignment.
 
 
 17
 Affirmed.
 
 
 
 [1]
 The issue of standing in antitrust actions is thoroughly discussed in Blue Shield of Virginia v. McCready, 457 U.S. 465 (1982); the problem of pass through damages is analyzed in Illinois Brick Co., et al. v. Illinois, 431 U.S. 720 (1977)
 
 
 [2]
 Although there might exist a credit in favor of CSG against the claim assigned to CFC because of the amount realized by F & D upon liquidation of the collateral, it would not constitute an assignment of the collateral